UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 22-cv-81976-Middlebrooks/Matthewman

ANDREW E. HOFFMAN,

      Petitioner,

v.

SECRETARY, DEPARTMENT OF
CORRECTIONS, STATE OF FLORIDA,

      Respondent.

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
**ON PETITIONER'S PETITION UNDER 28 U.S.C. § 2254 BY A PERSON IN STATE**
**CUSTODY PURSUANT TO A STATE COURT JUDGMENT [DE 1]**

THIS CAUSE is before the Court upon Petitioner, Andrew E. Hoffman's ("Petitioner")

Petition under 28 U.S.C. § 2254 by a Person in State Court Custody Pursuant to a State Court

Judgment ("Petition") [DE 1]. The matter was referred to the undersigned United States Magistrate

Judge by the Honorable Donald M. Middlebrooks, United States District Judge. *See* DE 4.

Respondent, the Secretary of the Department of Corrections, State of Florida ("Respondent"), has

filed a response to the Petition [DE 8], an Appendix [DE 9], and transcripts [DE 10]. Petitioner

has filed a reply [DE 15]. The Court has reviewed and carefully considered the Petition, the

response, the reply, the exhibits, the transcripts, and all pertinent portions of the underlying

criminal file.

## I.      BACKGROUND

This case originated in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm

Beach County, Florida (case number 502014CF006446BXXXMB). [DE 9-1, Ex. 1]. On August

21, 2014, Petitioner was charged by Re-Filed Indictment with first degree murder with a deadly weapon (Count 1), a capital felony, in violation of sections 782.04(1)(a)1, 782.04(1)(a)2, and 775.087(1), Florida Statutes; kidnapping (Count 2), a first degree felony, in violation of sections 787.01(1)(a) and (2), Florida Statutes; and robbery with a deadly weapon (Count 3), a first degree felony, in violation of sections 812.13(1) and (2)(a), Florida Statutes. [DE 9-1, Ex. 2]. A co-defendant, Herbert Savell, was also charged in the same counts in the indictment. [DE 9-1, Ex. 2]. The State sought the death penalty against Petitioner. [DE 9-1, Ex. 3].

On February 13, 2018, Petitioner pleaded guilty to all three charges after his counsel and the State negotiated that Petitioner would serve a life sentence on Count 1 to run consecutively with concurrent life sentences on Counts 2 and 3. [DE 9-1, Ex. 4].

The same day, Petitioner was sentenced to a life sentence on Count 1 with 1290 days' credit for time served. [DE 9-1, Ex. 7]. He was sentenced to life sentences on Counts 2 and 3 to run concurrently to one another, but to run consecutively to the life sentence for Count 1. [DE 9-1, Ex. 7].

Petitioner did not file a direct appeal. On March 11, 2019, Petitioner, through counsel, filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. [DE 9-1, Ex. 8]. After he was granted leave to amend, on March 10, 2020, Petitioner filed an amended 3.850 motion raising five claims of ineffective assistance of counsel and a claim of cumulative error. [DE 9-1, Ex. 11]. On January 31, 2022, the state court summarily denied the amended 3.850 motion and explicitly "adopt[ed] the facts, legal analyses, and conclusions of law contained in the State's Response as its own." [DE 9-1, Ex. 13]. Petitioner then appealed the denial of his amended 3.850 motion. [DE 9-1, Ex. 14–17]. On October 6, 2022, without requiring a responsive brief from the

State, the Fourth District Court of Appeal *per curiam* affirmed the denial of Petitioner's amended 3.850 motion. [DE 9-1, Ex. 18; *Hoffman v. State*, 350 So. 3d 347 (Fla. 4th DCA 2022) (table) (unpublished)]. Petitioner moved for rehearing and written opinion, which was denied. [DE 9-1, Ex. 19–20]. Mandate was issued on December 23, 2022. [DE 9-1, Ex. 21].

## II.  **PETITION, RESPONSE, AND REPLY**

### A.  **The Petition [DE 1]**

In the Petition, Petitioner seeks federal habeas relief on six different grounds: (1) that defense counsel rendered ineffective assistance of counsel by failing to advise Petitioner regarding available defenses in his case; (2) that defense counsel rendered ineffective assistance of counsel by failing to properly investigate and advise Petitioner that there were alternative explanations that the defense could have offered to refute the State's "blood spatter" theory; (3) that defense counsel rendered ineffective assistance of counsel by failing to properly advise Petitioner about the ways in which the credibility of the State's "snitch" could be attacked; (4) that defense counsel rendered ineffective assistance of counsel by failing to properly advise Petitioner regarding defenses to felony murder; (5) that defense counsel rendered ineffective assistance of counsel by failing to properly advise Petitioner regarding lesser included offenses; and (6) cumulative error. [DE 1].

### B.  **The Response [DE 8]**

The State responds to each of the grounds, arguing that Petitioner has not established ineffective assistance of counsel, and also that Petitioner has not established that, but for his counsel's alleged errors, he would not have pleaded guilty and would have insisted on going to trial. [DE 8]. The State also argues that an evidentiary hearing on Petitioner's claims is unwarranted. *Id.*

**C.  The Reply [DE 15]**

In reply, Petitioner asserts that he is entitled to an evidentiary hearing on all of his claims. [DE 15].

### III.    WHETHER PETITIONER IS ENTITLED TO AN EVIDENTIARY HEARING

As a preliminary matter, the Court finds that an evidentiary hearing is not required in this case. "Because this habeas petition can be resolved by reference to the state court record there is no need for an evidentiary hearing." *Josey v. Inch*, No. 19-62510-CV, 2020 WL 2497884, at *3 (S.D. Fla. Apr. 22, 2020), *report and recommendation adopted,* No. 19-CV-62510, 2020 WL 2494642 (S.D. Fla. May 14, 2020) (citing 28 U.S.C. § 2254(e)(2)); *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)) (holding that, if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing). Here, Petitioner has failed to demonstrate the existence of any factual disputes that warrant a federal evidentiary hearing. Furthermore, his claim does not rely on a "new rule of constitutional law" or a "factual predicate that could not have been previously discovered through the exercise of due diligence," and the facts of the underlying claim do not establish by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found [Petitioner] guilty of the underlying offense." *See* 28 U.S.C. § 2254(e). Therefore, Petitioner is not entitled to an evidentiary hearing and no evidentiary hearing shall be scheduled.

Further, the Court finds and RECOMMENDS that Petitioner's Petition be DENIED in its entirety, as discussed in detail below.

### IV.    RELEVANT LAW

Pursuant to 28 U.S.C. § 2254(d), an individual in state custody is entitled to federal habeas

4

corpus relief only on the ground that he is in custody in violation of the United States Constitution or laws or treaties of the United States. To obtain habeas corpus relief from a federal court, a prisoner must demonstrate that the state court's ruling on the claim: 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1)-(2) (2018); *see also Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Fugate v. Head*, 261 F.3d 1206, 1215–16 (11th Cir. 2001).

"A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in this Court's cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams*, 529 U.S. at 405–06. "A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies such precedents to the facts in an objectively unreasonable manner." *Id.* In the context of habeas petitions, "clearly established Federal law" refers to the holdings of the Supreme Court's decisions as of the time of the relevant state court decision. *Hall v. Head*, 310 F.3d 683, 690 (11th Cir. 2002) (citing *Williams*, 529 U.S. at 412). Federal courts are required to presume the correctness of the state court's factual findings unless the petitioner overcomes them by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).

The Supreme Court repeatedly has held that "[t]he petitioner carries the burden of proof" and that the § 2254(d)(1) standard is a high hurdle to overcome. *See Bobby v. Dixon*, 565 U.S. 23,

24 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011)); *Cullen v. Pinholster*, 563

U.S. 170, 180 (2011). State court decisions must be given a strong presumption of deference even

when the state court adjudicates a petitioner's claim summarily. *See Richter*, 560 U.S. at 96–100;

*Gill v. Mecusker*, 633 F.3d 1272, 1288 (11th Cir. 2011).

## V.     ANALYSIS

As an initial matter, there is no dispute that Petitioner is in custody or that the Petition is

timely under 28 U.S.C. § 2244(d)(1). *See* DE 8 at 1, 7–8. As the same sub-issues raised in the

Petition were raised in the postconviction motion and the appeal of the denial of the postconviction

motion, the issues are therefore exhausted. Therefore, the Court can proceed directly to the merits

of the Petition. The AEPDA, however, rather strictly limits the Court's review of "any claim that

was adjudicated on the merits in State court proceedings[.]" 28 U.S.C. § 2254(d). This Court must

determine only whether the state court's decision "involved an unreasonable application of[ ]

clearly established federal law" or "was based on an unreasonable determination of the facts[.]"

*Id*. Here, the last state court to adjudicate Petitioner's claims on the merits was the Fourth District

Court of Appeal, which issued an unwritten opinion summarily affirming the state court. The Court

is therefore required to perform a "'look-through' [of] the unexplained decision to the last related

state-court decision that does provide a relevant rationale." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192

(2018). In this case, on January 31, 2022, the state court summarily denied the amended 3.850

motion and explicitly "adopt[ed] the facts, legal analyses, and conclusions of law contained in the

State's Response as its own." [DE 9-1, Ex. 13]. Therefore, this Court must review the

reasonableness of the state court's order—with a particular emphasis on the State's response,

which was adopted by the state court. *See Cardona v. Dixon*, No. 19-81567-CIV, 2022 WL

2158715, at *6 (S.D. Fla. June 14, 2022) ("Since the [Fourth DCA] affirmed without a written decision, we 'look through' to the next reasoned decision (i.e., the trial court's Order Denying Post Conviction Relief, which incorporated the State's Response) as the presumptive reasoning of the Fourth DCA.").

Petitioner's first five claims are based on his allegations that his counsel performed deficiently. "In *Strickland v. Washington,* 466 U.S. 668, 687 (1984), the Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. Under the 'performance' prong, the defendant must show that counsel's performance 'fell below an objective standard of reasonableness.'" *King v. U.S.*, 250 F. App'x. 930, 932 (11th Cir. 2007) (citing *Strickland*, 466 U.S. at 688). "Under the 'prejudice' prong, the defendant must show that counsel's deficient performance actually prejudiced the defendant and that, "but for the attorney's error, the outcome of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694). The burden of persuasion is on a petitioner to prove, by a preponderance of competent evidence, that counsel's performance was unreasonable. *See Strickland,* 466 U.S. at 688. The petitioner must establish that particular and identified acts or omissions of counsel "were outside the wide range of professionally competent assistance." *Chandler v. United States*, 218 F.3d 1305, 1313, 1314 (11th Cir. 2000) (quoting *Burger v. Kemp,* 483 U.S. 776, 794 (1987); *see also Strickland,* 466 U.S. at 686 (stating that petitioner must show "counsel's representation fell below an objective standard of reasonableness", which means that counsel's performance was unreasonable "under prevailing professional norms. . . considering all of the circumstances").

"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is

all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689. When assessing a lawyer's performance, "[c]ourts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." *Chandler,* 218 F.3d at 1314 (11th Cir. 2000). When assessing ineffective assistance of counsel claims, the court's role is not to "grade a lawyer's performance; instead, [the court] determine[s] only whether a lawyer's performance was within the wide range of professionally competent assistance." *Van Poyck v. Fla. Dep't of Corr.,* 290 F.3d 1318, 1322 (11th Cir. 2002) (quoting *Strickland,* 466 U.S. at 690) (internal quotation marks omitted). "Intensive scrutiny and second-guessing of attorney performance are not permitted." *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994).

If a petitioner's claim of ineffectiveness turns on whether counsel should have raised issues of state law, § 2254(d) requires that the federal court defer to the state court's decision regarding its own laws. *See Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984) (superseded by statute on other grounds). It is "a fundamental principle [that] state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters." *See Herring v. Sec'y, Dept. of Corr.*, 397 F.3d 1338, 1354–55 (11th Cir. 2005) (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)).

A.    Whether Defense Counsel Rendered Ineffective Assistance of Counsel by Failing to Advise Petitioner Regarding Available Defenses [Ground 1]

Petitioner argues that, as a result of his counsel failing to advise him regarding available defenses in this case, he was "denied his right to make a knowing, intelligent, and voluntary decision regarding his guilty plea . . . and was denied his right to effective assistance of counsel in

violation of the Sixth Amendment to the United States Constitution." [DE 1 at 4–5]. According to Petitioner, after he was criminally charged, he told his counsel that his friend/co-defendant, Mr. Savell (and not Petitioner), actually killed the victim in this case, as well as the specific facts regarding the crime. *Id.* at 6–7. Thereafter, Petitioner's counsel allegedly told him that "he had no defense to the charges in this case" and that "if he did not enter a guilty plea and accept the State's offer of a life sentence, he would be found guilty at trial and the jury would recommend the death penalty." *Id.* at 7. However, after Petitioner entered his guilty plea, he determined that he had a valid defense, to wit, "Mr. Savell had a motive (the victim threatening to end the relationship between Mr. Savell and his girlfriend), Mr. Savell tied up the victim and put her in the trunk, and Mr. Savell killed the victim with the bat." *Id.* According to Petitioner, although he "may have been guilty of being an accessory, he is not guilty of first-degree murder." *Id.* Petitioner also asserts that Mr. Savell would not have been a credible witness at trial. *Id.* In sum, Petitioner contends that the state courts' rulings on this issue "were contrary to and an unreasonable application of *Strickland*, Petitioner Hoffman's Sixth Amendment right to the effective assistance of counsel, and Petitioner Hoffman's Fifth Amendment rights. Additionally, the state courts' rulings were based on an unreasonable determination of the facts in light of the evidence contained in the state court record." *Id.* at 11.

In response, the State first points out that Petitioner is "only attacking his guilty plea as to the murder charge in Count 1 and not as to the kidnapping and robbery charges." [DE 8 at 16]. Next, the State explains "regardless of whether his co-defendant was the one who actually killed the victim, Petitioner could have been found guilty as charged as a principal. Under the principal theory, a defendant is treated as if he committed the acts done by the other person." *Id.* at 17.

9

Furthermore, "Petitioner's counsel specifically noted that Petitioner was pleading guilty as a principal." *Id.* According to the State, since the "facts as alleged by Petitioner do not form a legal defense . . . Petitioner's counsel cannot be considered ineffective for failing to assert or advise Petitioner of such a defense." *Id.* The State contends that Petitioner also is not entitled to relief because his "guilty plea was entered freely, voluntarily and knowingly with the advice received from competent counsel and not involuntarily and/or unknowingly entered, as now claimed by Petitioner." *Id.* at 18. The State further argues that "because he had no viable defenses, there was no objectively reasonable probability that Petitioner would have gone to trial where he was facing death instead of entering a guilty plea in exchange for a life sentence." *Id.* at 20. Finally, it maintains that

> Based on the strength of the state's case, there is no reasonable probability that Petitioner would have elected to go to trial even if counsel had advised him about his so-called 'accessory' defense to felony murder. Petitioner fails to show that the state courts' adjudication of Ground 1 was contrary to, or an unreasonable application of clearly established federal law. Nor were the decisions based on an unreasonable determination of the facts in light of the evidence contained in the record.

*Id.* at 23.

Petitioner replies that "[c]ontrary to the Respondent's assertion, the facts alleged by Petitioner Hoffman in his state postconviction motion establish that he had a valid legal defense that his actions did not amount to him being a principal to first-degree murder – but instead established at most that he was guilty as an accessory after the fact." [DE 15 at 2]. He further argues that the "state postconviction court merely relied on the documents attached to the State's response to Petitioner Hoffman's state postconviction motion for the proposition that the State's case against Petitioner Hoffman was 'strong,'" but that "the vast majority of the documents

attached to the State's response are hearsay." *Id.* at 3–4.

This Court must presume the correctness of the state court's factual findings unless the petitioner overcomes them by clear and convincing evidence. Petitioner has failed to meet that burden here for the following reasons.

First of all, the Court notes that, in the amended 3.850 motion filed in state court, Petitioner simply asserted that "[a]lthough the Defendant may have been guilty of being an accessory, he is not guilty of first-degree murder." [DE 9-1, Ex. 11 at 6]. As stated above, the Court must perform a "look-through" of the unexplained Fourth DCA and state court decision and consider the State's Response to Defendant's Amended Motion for Postconviction Relief. *See Wilson*, 138 S. Ct. at 1192. In that response, the State interpreted Petitioner's claim to be that he was only an "accessory before the fact," a concept that the State explained in its response no longer existed in Florida. [DE 9-1, Ex. 12 at 7]. Petitioner used the term "accessory" again in his Petition, rather than the term "accessory after the fact." [DE 1 at 8]. Petitioner argues for the first time in his reply filed in this federal court that the facts he alleged in his amended 3.850 motion "establish that he had a valid legal defense that his actions did not amount to him being a principal to first-degree murder—but instead established at most that he was guilty as an accessory after the fact." [DE 15 at 2]. Due to Petitioner's failure to make a clear argument in his amended 3.850 motion, and his failure to make a clear argument in the Petition filed in this federal court, Petitioner has arguably waived any assertion that his counsel performed deficiently by failing to advise him that a jury could have possibly determined that he was an "accessory after the fact" at trial.

Regardless, Petitioner cannot meet the *Strickland* test here as he cannot establish that his counsel's performance fell below an objective standard of reasonableness. Petitioner has not

established that he had a valid defense in the case and simply makes self-serving allegations regarding his co-defendant's conduct and lack of credibility. Petitioner further speculates as to what the jury would have determined had there been a trial.

Mostly importantly, Petitioner cannot establish prejudice. It is well-established that "a voluntary and intelligent guilty plea must stand unless induced by misrepresentations made to the accused by the court, prosecutor, or his own counsel." *Haile v. United States*, No. 17-CR-20633, 2021 WL 11702298, at *3 (S.D. Fla. May 7, 2021), *report and recommendation adopted,* No. 1:19-22161-CV, 2021 WL 11702297 (S.D. Fla. Aug. 3, 2021), *aff'd,* No. 21-12955, 2022 WL 2251710 (11th Cir. June 22, 2022) (citing *Brady v. United States,* 397 U.S. 742, 748 (1970)). "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988). In the case at hand, the colloquy between Petitioner and the trial court at the time of the change of plea hearing establishes that he was satisfied with his counsel's services, that Petitioner knowingly, intelligently and voluntarily entered the guilty plea, and that Petitioner entered into the plea agreement of his own free will. *See* DE 10-1 at 3–4, 14–15. Additionally, Petitioner completed a Waiver of Rights Sheet [DE 9-1, Ex. 4].

Furthermore, in order for Petitioner to prevail on this issue, he must have demonstrated here or in the state court, that but for any purported error by counsel, he would not have pleaded guilty and would have gone to trial. *Hill v. Lockhart*, 474 U.S. 52, 56-59 (1985). In this case, a reasonable probability does not exist that Defendant would have insisted on going to trial instead of pleading guilty had he been aware of his alleged defense that his co-defendant was wholly responsible for the murder. This defense was not likely to succeed at trial in light of the evidence

against him, which included a DNA report establishing that Petitioner's shorts had the victim's blood splatter on them, surveillance video depicting Petitioner wearing the same shorts, and the co-defendant's testimony concerning Petitioner's conduct. *See* 9-1, Ex. 26, 28; DE 10-1 at 9. It is also clear that the guilty plea was in Petitioner's best interest as he avoided the death penalty by way of the plea negotiated with the prosecution. *See Cade v. Inch*, No. 18-10068-CV, 2021 WL 3639829, at \*13 (S.D. Fla. July 23, 2021), *report and recommendation adopted,* No. 18-10068-CIV, 2021 WL 3639618 (S.D. Fla. Aug. 17, 2021) ("Entry of the guilty pleas was clearly in the Petitioner's best interest. Because of the negotiated plea, Petitioner avoided a significantly higher term of 40 years of imprisonment. Further, had he complied with the court's order and surrendered as directed, his total sentences would have been reduced to 37.275 months of imprisonment"); *see also Leonard v. Inch*, No. 4:20-CV-10005, 2021 WL 1842287, at \*11 (S.D. Fla. Apr. 12, 2021), *report and recommendation adopted,* No. 4:20-CV-10005, 2021 WL 1840584 (S.D. Fla. May 7, 2021) ("It also cannot be overlooked that the entry of the guilty plea was clearly in the best interest of Petitioner. Because of the plea negotiated with the prosecution by defense counsel, Petitioner avoided a significantly higher term of life imprisonment, which could have been ordered to run concurrent or consecutive to the revocation judgment."). In sum, Petitioner simply has not established prejudice through his speculative assertions that he would not have pleaded guilty had his counsel advised him about available defenses in this case.

B.  Whether Defense Counsel Rendered Ineffective Assistance of Counsel by Failing to Properly Investigate and Advise Petitioner Regarding the State's Claim that "Blood Splatter" Was Found on His Shorts [Ground 2]

Petitioner argues in his Petition, as he argued in state court, that his counsel "rendered ineffective assistance by failing to properly investigate and advise him regarding the State's claim

that 'blood splatter' was found on his shorts (i.e., defense counsel failed to inform Petitioner Hoffman that there were alternative explanations that the defense could have offered to refute the State's 'blood splatter' theory)." [DE 1 at 16]. And, as a result of this, he was "denied his right to make a knowing, intelligent, and voluntary decision regarding his guilty plea (in violation of the Fifth Amendment to the United States Constitution) and was denied his right to effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution." *Id.* More specifically, Petitioner asserts that defense counsel should have informed him that there were "alternative explanations that the defense could have offered to refute the State's 'blood splatter' theory," such as that Petitioner was simply in the vicinity at the time Mr. Savell hit the victim with a bat or that Mr. Savell was actually wearing the shorts at the time of the murder. *Id.* at 17–18. Petitioner further argues that counsel should have retained an expert regarding these alternate theories. *Id.* at 17.

In response, the State explains that, here, "Petitioner offers nothing other than his own self-serving and conclusory allegations that there were alternative explanations to how the blood spatter got on his shorts and that a blood spatter expert would have corroborated his alternative explanations." [DE 8 at 28]. Further, "[w]hether the State intended to use the blood spatter evidence from the beginning as claimed by Petitioner does not support his claim as there is nothing but Petitioner's self-serving statements regarding this claim." *Id.* The State additionally argues that the evidence "established that Petitioner was wearing the shorts when he beat the victim with the baseball bat as shown by the forensic evidence of Petitioner's DNA on the inside waistband of the shorts and the inside front crotch which contained the victim's blood spatter." *Id.* at 29. The State points out that, as Petitioner denied ever getting out of the car, "counsel cannot be ineffective for

14

failing to adequately advise him of alternative explanations that would have been in direct contradiction to Petitioner's own statement." *Id.* at 30. Next, the State asserts that, even if the blood splatter got on Petitioner's clothes while the co-defendant hit the victim with a bat, "trial counsel was not ineffective for failing to advise him of this because Petitioner would still be liable for felony murder as a principal." *Id.* According to the State, "Petitioner's mere assertion that he would have insisted on going to trial but for counsel's errors is insufficient to establish prejudice." *Id.*

Petitioner cannot meet the *Strickland* test here as he cannot establish that his counsel's performance fell below an objective standard of reasonableness. Petitioner's argument that defense counsel should have provided him with possible alternative explanations about the blood spatter and should have hired an expert is frivolous. Petitioner is improperly speculating as to what any potential expert would have found regarding the blood spatter and "mere speculation that missing witnesses would have been helpful is insufficient to meet the petitioner's burden of proof." *Streeter v. United States*, 335 F. App'x 859, 864 (11th Cir. 2009) (citing *Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001)). And, as stated above, the evidence showed that Petitioner was wearing shorts which had the victim's blood on them; it is unclear what an expert could have possibly done to change that fact. Counsel's performance was objectively reasonable, and Petitioner has not met his burden to show it was at all deficient. Furthermore, the Court finds no prejudice to Petitioner for the same reasons stated in the above section of this Report and Recommendation. Thus, the state court reasonably applied *Strickland*.

    C.    <u>Whether Defense Counsel Rendered Ineffective Assistance of Counsel by Failing to Properly Advise Petitioner Regarding the State's Intent to Use "Snitch" Testimony at Trial [Ground 3]</u>

Petitioner argues in his Petition, as he argued in state court, that his counsel "rendered

ineffective assistance of counsel by failing to properly advise him regarding the State's intent to use 'snitch' testimony at trial," thus denying him of his right to make a knowing, intelligent, and voluntary decision regarding his guilty plea" and "his right to effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution." [DE 1 at 23–24]. Specifically, Petitioner argues that his counsel "failed to inform him that under Florida law, snitch testimony is inherently unreliable" and "also failed to properly investigate the snitch – and had counsel done so counsel would have discovered that the snitch was previously housed in the jail with codefendant Herbert Savell – meaning that the snitch's credibility could be attacked by arguing that his information about the case came from Mr. Savell and not Petitioner Hoffman." *Id.* at 24–25.

In response, the State explains that the alleged snitch was never listed as a state's witness so "Petitioner's claim that trial counsel informed him of this is belied by the record and he cannot establish counsel was deficient." [DE 8 at 31]. The State also argues that "Petitioner cannot show there was a reasonable probability that he would have insisted on going to trial had he been informed that jailhouse snitch testimony is unreliable" and that "Petitioner's bare assertion that he would not have entered a guilty plea and would have insisted on going to trial is insufficient to establish prejudice." *Id.* at 32. Further, the "forensic evidence corroborated the co-defendant's version of events and contradicted Petitioner's version." *Id.*

The State claims that the alleged snitch was not on the State's witness list, and Petitioner concedes this point. [DE 1 at 25]. The crux of Petitioner's argument seems to be that, because his counsel told him that a particular individual was going to be presented as a snitch witness during trial, Petitioner gave up his constitutional right to a trial and chose to plead guilty. *Id.* However,

this is a self-serving argument, and Petitioner has listed several other examples of alleged deficient performance by his counsel which he also attributed to his decision to enter a guilty plea. Regardless, for the reasons stated in section A above, Petitioner has not met his burden with regard to establishing the prejudice prong of *Strickland*. Thus, the state court reasonably applied *Strickland*.

    D.   <u>Whether Defense Counsel Rendered Ineffective Assistance of Counsel by Failing to Properly Advise Petitioner Regarding Defenses to Felony Murder [Ground 4]</u>

Petitioner argues in his Petition, as he argued in state court, that his counsel "rendered ineffective assistance of counsel by failing to properly advise him regarding defenses to felony murder," thus denying him of his right to make a knowing, intelligent, and voluntary decision regarding his guilty plea" and "his right to effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution." [DE 1 at 27]. Petitioner asserts that counsel should have told him that he "would not be guilty of kidnapping if he had a reasonable belief that the victim was already dead when she was placed in the trunk," that he would not be guilty of robbery for these same reasons, and that "[p]ursuant to the 'afterthought' jury instruction, the subsequent taking of the victim's property would constitute theft – not robbery." *Id.* at 28.

In response, the State first argues that "Petitioner's guilty plea was entered freely, voluntarily and knowingly with the advice received from competent counsel and not involuntarily and/or unknowingly entered, as now claimed by Petitioner." [DE 8 at 33]. The State next asserts that the "record sufficiently establishes that counsel provided Petitioner with an understanding of the law in relation to the facts, so that he could make an informed and conscious decision between accepting the state's offer and going to trial." *Id.* The State also asserts that none of the defenses to felony murder listed by Petitioner in the Petition were actually viable in light of the evidence in

the case. *Id.* at 34–35. Moreover, "because the State also charged Petitioner with premediated murder, regardless of whether he had a defense to the underlying felonies of kidnapping and robbery, there was sufficient evidence as stated in the factual basis for his plea, T. 4-10, to support a conviction for premediated murder." *Id.* at 35–36. Finally, the State explains that "in light of the overwhelming evidence of Petitioner's guilt, there was no reasonable probability that he would have gone to trial where he was facing the death penalty instead of entering a plea and receiving a life sentence." *Id.* at 36.

The Court notes that Petitioner failed to reply to the State's argument that it would not have mattered if Petitioner's counsel had told him about possible defenses to felony murder since Petitioner was also charged with premeditated murder and there was sufficient evidence to support a conviction for premeditated murder. Petitioner has thus waived any response. This waiver is relevant to both the deficient performance and prejudice prongs of *Strickland*.

Moreover, Petitioner has not met his burden to demonstrate that counsel's performance fell below an objective standard of reasonableness. Petitioner has not established that he had valid defenses in the case in light of the evidence against him and simply makes self-serving allegations regarding Petitioner's beliefs during the commission of the crime. Petitioner further speculates as to what the jury would have determined had there been a trial. Regardless, for the reasons stated in section A above, Petitioner has not met his burden with regard to establishing the prejudice prong of *Strickland*. Thus, the state court reasonably applied *Strickland*.

E. <u>Whether Defense Counsel Rendered Ineffective Assistance of Counsel by Failing to Properly Advise Petitioner Regarding Lesser Offenses [Ground 5]</u>

Petitioner argues in his Petition, as he argued in state court, that his counsel "rendered ineffective assistance of counsel by failing to properly advise him regarding lesser offenses," thus

denying him of his right to make a knowing, intelligent, and voluntary decision regarding his guilty plea" and "his right to effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution." [DE 1 at 30]. These lesser offenses included second-degree murder and manslaughter, according to Petitioner. *Id.*

In response, the State maintains that "[e]ven if counsel failed to advise Petitioner on the lesser-included offenses of second-degree murder and manslaughter, Petitioner cannot establish prejudice." [DE 8 at 37]. The State points out that Petitioner is improperly speculating that a jury would have only convicted him of lesser included offenses. *Id.*

Petitioner has not met his burden to demonstrate that counsel's performance fell below an objective standard of reasonableness. Petitioner is improperly speculating as to whether the jury would have found him guilty of the lesser included offenses at trial. More importantly, the Court finds here that, even if his counsel failed to properly advise him about lesser included offenses, for the reasons stated in section A above, Petitioner has not met his burden with regard to establishing the prejudice prong of *Strickland*. Thus, the state court reasonably applied *Strickland*.

F.  Cumulative Error [Ground 6]

Petitioner argues in his Petition, as he argued in state court, that "[a]ll of the errors committed in Petitioner Hoffman's case, considered either individually or together, resulted in Petitioner Hoffman being denied a fair proceeding." [DE 1 at 32]. The States responds that there has been no error here. [DE 8 at 39].

Based on the Court's findings as to each of the prior sub-arguments, the Court also finds no cumulative error occurred in this case.

## VI.    <u>CERTIFICATE OF APPEALABILITY</u>

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b) to the Rules Governing § 2254 Proceedings.

After a careful review of the record, the Court finds that Petitioner is not entitled to a certificate of appealability. "A certificate of appealability may [be] issued[d] . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To merit a certificate of appealability, Petitioner must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues she seeks to raise. *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *see also Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). Because the claims raised in the Petition are clearly without merit, Petitioner cannot satisfy the *Slack* test. Upon consideration of the record as a whole, the District Judge should deny a certificate of appealability.

## VII.    <u>RECOMMENDATION TO THE DISTRICT JUDGE</u>

A very careful review of the entire record establishes that Petitioner's claims are meritless and due to be denied for the reasons stated above. No evidentiary hearing is necessary. The Petition fails to establish any grounds for relief. Accordingly, the undersigned United States Magistrate Judge recommends that the United States District Judge **DENY** Petitioner's Petition [DE 1] and **DENY** a Certificate of Appealability.

## <u>NOTICE OF RIGHT TO OBJECT</u>

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Donald M. Middlebrooks. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 8th day of November 2023.


WILLIAM MATTHEWMAN
United States Magistrate Judge